UNITED STATES of America, Plaintiff,

v.

**CITY OF MILWAUKEE et al., Defendants.**

Civ. A. No. 74–C–480.

United States District Court, E. D. Wisconsin.

Dec. 14, 1979.

Maimon Schwarzschild, U. S. Dept. of Justice, Civil Rights Div., Washington, D. C., for plaintiff.

James B. Brennan, City Atty., and Maurice L. Markey, Asst. City Atty., Milwaukee, Wis., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

REYNOLDS, Chief Judge:

On October 17, 1974, this Court entered a consent decree which enjoined the Milwaukee Fire Department from engaging in any employment practice that has the purpose or effect of discriminating on the basis of sex against applicants to or employees of

the Fire Department. The order was modified in October 1976 to provide that 5 per cent of the firefighter appointments would go to females. On June 14, 1979, plaintiff moved the court for supplemental relief pursuant to paragraph 18 of the 1974 consent decree. The motion requested that women be trained as paramedics without first passing the training academy course for firefighters, and that Mary Polasek and Sue Bethke be offered immediate appointments and an opportunity to be trained as paramedics.

A hearing was held by this court on October 26, 1979, on the question of whether the Fire Department should be required to train women as paramedics without first requiring them to pass the fire training academy course. The Court has concluded that the Fire Department should be so required, and on the basis of the following discussion and the findings of fact and conclusions of law, the motion for supplemental relief is granted as indicated in the order.

 Under Title VII law, the procedure is that the plaintiff must show that discrimination exists. Then the burden shifts to the employer who must show a "business necessity" for the practice in question. If a business necessity is established, the plaintiff can try to show that other selection procedures would serve the employer's legitimate interests. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 245 (1975); *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

The stance of the instant case is such that the hearing centered on the Fire Department's attempts to show a business necessity for its requirement that all Milwaukee paramedics be qualified firefighters, i. e., that they pass the fire training academy course. Defendants attempted to establish (1) that the paramedics must be able to fight fires should it ever become necessary for them to do so, and (2) that due to the high stress encountered in their jobs, paramedics must be trained firefighters so that they can be returned to firefighter duties after they "burn out" as paramedics.

As the following findings of fact and conclusions of law show, the Court has determined that the defendants did not meet their burden of establishing that paramedics were used in firefighting duties in the regular course of Fire Department operations, nor did defendants convince the Court that the possibility of burnout constitutes a business necessity for requiring paramedics to qualify as firefighters. It is unconvincing to say that a person who burns out as a paramedic should then operate efficiently in another high stress occupation, that of firefighter. If, however, as some of the testimony indicated, the paramedics would be transferred to non-firefighting duties within the Fire Department, then the defendants can establish no business necessity that such paramedics be qualified firefighters.

Additionally, at this time the Court will deny without prejudice those parts of the motion which deal with individual relief for Mary Polasek and Sue Bethke. As the Court indicated at the commencement of the hearing, those issues are not ripe. Under the instant order of the court, the two women, like other women, can apply to become paramedics in the City of Milwaukee.

### FINDINGS OF FACT

1. This Court entered a consent decree on October 17, 1974, which enjoined the Milwaukee Fire Department from engaging in any employment practice that has the purpose or effect of discriminating on the basis of sex against applicants to or employees of the Fire Department. (Joint pretrial report, ¶ 2, filed September 5, 1979.)

2. The Court entered supplemental orders on October 14, 1978, directing that the Fire Department seek to achieve the goal of giving 5 per cent of its firefighter appointments to women. (Joint pretrial report, ¶s 3–4, filed September 5, 1979.)

3. The Milwaukee Fire Department conducts a paramedic program and selects and trains paramedics exclusively from among

firefighters serving in the department. (Joint pretrial report, ¶s 5–6, filed September 5, 1979.)

4. The full complement of paramedics is forty-eight (48), but there has been a shortage of paramedics for several months. (Deposition of Chief William Stamm, filed August 30, 1979.) There are now forty-four (44) paramedics in the Milwaukee Fire Department. (Cross-examination of Chief William Stamm.)

5. In order to become a firefighter, a candidate must pass the Milwaukee Fire Department's twelve-week training course for firefighters. (Cross-examination of Chief William Stamm and Ernest Johnson.)

6. No woman has ever passed the Milwaukee Fire Department's training course and become a firefighter. (Cross-examination of Chief William Stamm.)

7. No woman has ever served as a paramedic in the Milwaukee Fire Department. (Joint pretrial report, ¶ 8, filed September 5, 1979.)

8. The requirement that a potential paramedic first pass the Fire Department's training course and become a firefighter has excluded all women from becoming paramedics in the Milwaukee Fire Department.

9. Firefighter paramedics in the Milwaukee Fire Department work full time as paramedics after receiving extensive training in emergency medicine. Paramedic units are assigned to certain fire stations and are dispatched by Fire Department dispatchers. They respond to calls in an ambulancelike vehicle and provide emergency medical services under the supervision of physicians who coordinate all paramedic services for Milwaukee County. Paramedics treat cardiac patients, victims of injuries, and a wide variety of other medical emergencies. (Deposition of John Gutowski, filed August 30, 1979, and cross-examination of Chief William Stamm.)

10. Paramedics seldom, if ever, perform firefighting duties (and are never relied upon to extinguish fires) during their regular work week. Some paramedics volunteer for overtime "special duty" assignments which may involve firefighting duty. (Depositions of Lt. Edward Wergin, Gerald Gifford, and William Wengel, filed August 30, 1979.)

11. Paramedics in the Fire Department perform a job that is different in kind from that of firefighters. Paramedics so seldom assist in fire duties of any kind as to make these occasional activities *de minimis*. Moreover, there has been no showing that civilian paramedics, including women, could not assist the firefighters in the ways paramedics now occasionally do without being full-fledged firefighters.

12. Non-firefighters, including women, perform competently as paramedics in many American cities and execute all the tasks performed by firefighter paramedics in Milwaukee. In some cities, such as Chicago, "civilians" (i. e., non-firefighters), including women, are employed as paramedics by the Fire Department; they wear the Fire Department's paramedic uniform and staff the paramedic units stationed in the firehouses. (Testimony of Dr. Vera Morkovin, Dr. Norman McSwain, and Paramedic Patricia Flood.)

13. Defendants failed to show that firefighter paramedics are more effective than civilian paramedics within a Fire Department, or that success in fire training is related to or predictive of success as a paramedic.

14. Defendants offered no psychological validity study supporting the requirement that a potential paramedic first pass the firefighter training course and become a firefighter.

## CONCLUSIONS OF LAW

1. Use of a selection procedure that screens out women disproportionately is unlawful under Title VII, unless that procedure is shown by the employer to be a valid predictor of job success or otherwise required by business necessity. *Grigg v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 158 (1975); *Dothard v. Rawlinson*,

433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977).

■ 2. The requirement that paramedics must successfully have completed the firefighter training academy course disproportionately excluded women. The burden was therefore upon the city to show that the requirement has been validated in accordance with the standards of the psychological profession as expressed in the Uniform Guidelines on Employee Selection Procedures, 28 C.F.R. § 50.14, 29 C.F.R. Part 1607, 43 Fed.Reg. 38290 (August 25, 1978), or is otherwise required by business necessity. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 158 (1975). Defendants have failed to meet that burden. The requirement that potential paramedics successfully complete the firefighter training academy course therefore constitutes unlawful discrimination against women under Title VII.

3. The Milwaukee Fire Department's failure to meet its goal of hiring and retaining 5 per cent women among its recruits is not justified by the invalid requirements for potential paramedics, which requirements have screened out all female candidates.

4. In light of the conclusions set forth above, the United States is entitled to a supplemental order directing defendants to hire and train qualified women as paramedics within the Fire Department without first requiring potential paramedics to complete the firefighter training course.

### ORDER

IT IS THEREFORE ORDERED that defendants:

1. Permit women to apply for positions as paramedics within the Milwaukee Fire Department and to be hired and trained specifically for such positions if they meet valid qualifications without first passing the training academy course for firefighters.

2. Submit reports to the court and the plaintiff on the implementation of these actions at least at six-month intervals and in accordance with paragraph 17(b) of the consent order of October 17, 1974.

This order of supplemental relief shall remain in effect until any party to this action files an application for further relief.